

Exhibit 1

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas  75185-2841



U.S. Citizenship
and Immigration
Services

TO:
Victoria Chen, Esq.
N. America Immigration Law Group
2723 S. State St., Ste. 150
Ann Arbor, MI 48104

DATE: October 23, 2019

Petition: Form I-140

| | |
|---|---|
| File Number: | SRC1690244939 / A208859346 |
| Beneficiary: | |

Saeid DOUSTI

### NOTICE OF INTENT TO REVOKE

Reference is made to Immigrant Petition for Alien Worker (Form I-140) filed by Saeid Dousti, the self-petitioner, on May 16, 2016, on his own behalf, in accordance with Section 203(b)(2)(B)(i) of the Immigration and Nationality Act (Section 203(b)(2)(B)(i) of the INA), to perform the services of Postdoctoral Research Associate. U.S. Citizenship and Immigration Services (USCIS) approved Form I-140 on June 18, 2016.

After a review of the petition and all of the supporting evidence it appears that USCIS approved Form I-140 in error. Therefore, USCIS intends to revoke the approval of Form I-140.

Section 205 of the INA states that the Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under Section 204 of the INA. Such revocation shall be effective as of the date of approval of any such petition.

In addition, 8 Code of Federal Regulations Section 205.2(a) [8 C.F.R. Section 205.2(a)] states that any Service (now USCIS) officer authorized to approve a petition under Section 204 of the INA may revoke the approval of that petition upon notice to the petitioner on any ground other than those specified in Section 205.1 when the necessity for the revocation comes to the attention of this Service (now USCIS).

The realization that an immigrant visa petition was approved in error constitutes good and sufficient cause for revoking its approval. A notice of intent to revoke the visa petition is properly issued for "good and sufficient cause" when the evidence of record at the time of issuance, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof. *See Matter of Ho,* 19 I&N Dec. 582 (BIA 1988) and *Matter of Estime,* 19 I&N Dec. 450 (BIA 1987).

In addition, a revocation can only be grounded upon, and the petitioner is only obliged to respond to, the allegations in the Notice of Intent to Revoke (NOIR). *Matter of Arias,* 19 I&N Dec. 568 (BIA 1988).

The petitioner must establish that it has satisfied each adjudicative element to establish eligibility for the requested benefit. If there are any issues which the petitioner fails to overcome, then each of those issues forms a separate basis for the revocation. In this case, the following issues independently form the basis for this intended revocation and will be discussed in this notice:

- The substantial merit and national importance of the proposed endeavor;
- Whether the self-petitioner is well positioned to advance the proposed endeavor; and
- Whether the balancing factors determine the self-petitioner's waiver benefits the United States.

Section 203(b) of the Act sets out this sequential framework:

> (2) Aliens who are members of the professions holding advanced degrees or aliens of exceptional ability.
>
>> (A) In general. - Visas shall be made available ... to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.
>
>> (B) Waiver of job offer –
>
>>> (i) National interest waiver. ... [T]he Attorney General may, when the Attorney General deems it to be in the national interest waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

While neither the statute nor the pertinent regulations define the term "national interest" the Administrative Appeals Office (AAO) recently set forth a new framework for adjudicating national interest waiver petitions. *See Dhanasar*, 26 I&N Dec. 884 (AAO 2016).[1] *Dhanasar* states that after EB-2 eligibility has been established, USCIS may, as a matter of discretion, grant a national interest waiver when the below prongs are met.

The first prong, substantial merit and national importance, focuses on the specific endeavor that the foreign national proposes to undertake. The endeavor's merit may be demonstrated in a range of areas such as business, entrepreneurialism, science, technology, culture, health, or education. In determining whether the proposed endeavor has national importance, we consider its potential prospective impact.

The second prong shifts the focus from the proposed endeavor to the foreign national. To determine whether he or she is well positioned to advance the proposed endeavor, we consider factors including, but not limited to: the individual's education, skills, knowledge and record of success in related or similar efforts; a model or plan for future activities; any progress towards achieving the proposed endeavor; and the interest of potential customers, users, investors, or other relevant entities or individuals.

The third prong requires the petitioner to demonstrate that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. In performing this analysis, USCIS may evaluate factors such as: whether, in light of the nature of the foreign national's qualifications or the proposed endeavor, it would be impractical either for the foreign national to secure a job offer or for the petitioner to obtain a labor certification; whether, even assuming that other qualified U.S. workers are available, the United States would still benefit from the foreign national's contributions; and whether the national interest in the foreign nationals contributions is sufficiently urgent to warrant forgoing the labor certification process. In each case, the factor(s) considered must, taken together, indicate that on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification.

The self-petitioner possesses a doctor of philosophy degree in mechanical and aerospace engineering from The University of Virginia. The issues in contention are whether the self-petitioner has established that a substantial merit and national importance of the proposed endeavor exists, whether he is well

---

[1] In announcing this new framework, the AAO vacated its prior precedent decision, *Matter New York State Department Transportation*, 22 I&N Dec. 215 (Act. Assoc. Comm'r 1998) *(NYSDOT)*.

Receipt No. SRC1690240460
Page 3

positioned to advance the proposed endeavor, and whether a waiver of the job offer requirement, and thus a labor certification, is in the national interest.

A.   Substantial Merit and National Importance of the Proposed Endeavor

At the time of filing, the self-petitioner stated in part:

> Dr. Dousti is currently employed as a Senior Technical Fellow at Rotor Bearing Solutions International, LLC. In this position, he conducts rotordynamic analyses, improves fluid film designs and fluid film bearing computer program development, and enhances active extreme importance, because it will **increase the efficiency and heighten the overall performance of bearing-supported equipment. This equipment is exceedingly valuable and integral in the design and construction of widely employed rotating equipment requisite for machinery as widespread as centrifugal compressors, steam turbines, computer components, gears, and even airplane jet engines. Through his incisive investigations of viable methods through which to enhance bearing technologies, Dr. Dousti is contributing to industrial advancements that benefit the nation in terms of cost efficiency, performance, environmental cleanliness**...The impact of Dr. Dousti's unique work on rotordynamcs and high speed bearing-supported systems is particularly important for replacing conventional rotors via cost-effective means, as well as for attaining ecofriendly alternatives to rotating machinery equipment. Dousti has been making the design and subsequent implementation of active magnetic bearings a reality and building foundational knowledge in the research community. (Emphasis on original).

To satisfy the national importance requirement, the self-petitioner must demonstrate the "potential prospective impact" of his work. He asserts that his **"continued research has substantial benefits for our country and the research community as a whole"** (emphasis on original) because he "has contributed and will continue to contribute to the attainment of environmentally clean and highly efficient bearing designs that move the field of mechanical engineering forward, advancing rotordynamic technology to an entirely unprecedented level," but he did not discuss the breadth of those implications that his research work has, and he did not provide objective documentary evidence to support his statements.

The self-petitioner has not established that his proposed work has implications beyond the educational institution he attended or the business organization that employs him; at a level sufficient to establish the national importance of his endeavor.[2] For example, the record does not show that the specific work he proposes to undertake, offers original innovations that advance the field of mechanical engineering or the specific field the self-petitioner intends to undertake,[3] or otherwise has broader implications in the mechanical engineering or environmental field.

The evidence in the record included statements from five of the self-petitioner's friends and colleagues and one independent advisor. Shahab Fatima, Ph.D., DST Inspire Fellow, Industrial Tribology, Machine Dynamics and Maintenance Engineering Centre (ITMMEC), Indian Institute of Technology Delhi, stated in part:

> ...I am a fellow mechanical engineer with a particular focus on rotating machinery...One way in which Dr. Dousti has impacted our mutual field is by introducing a novel permanent bias active magnetic bearing design. In rotating machinery, bearings allow the

---

[2] In *Dhanasar*, the AAO determined that the petitioner's teaching activities did not rise to the level of having national importance because they would not impact his field more broadly. *Id.* at 893.

[3] The self-petitioner stated in his original statement that his proposed endeavor is mechanical engineering, but he will also contribute to the environmental field as well.

system to run smoothly, resist shock loads, and achieve extended lifespans. Because of this central role in system performance, understanding bearing behavior is an important method of improving rotating machinery designs. Additionally, because many conventional bearings use oils and other contaminants for lubrication, understanding bearing behavior in the absence of these components is a much-needed step toward increasing the environmental friendliness and production efficiency of rotating machinery. Dr. Dousti made noteworthy progress on both of these fronts by designing an alternative bearing based on permanent magnets. This bearing design entirely eliminates the need for lubrication, thus solving the issue of environmental contamination. It further utilizes only permanent magnets and coils for stabilization and magnetic force, meaning that it is simultaneously small in size, facile and affordable to produce, and able to consume negligible amounts of power. Beyond these notable economic and environmental benefits, Dr. Dousti's use of permanent magnets also offers enhanced reliability and performance speed. By designing this innovative bearing, Dr. Dousti has taken a critical step toward replacing fluid film bearings in rotating machinery.

Doctor Fatima further stated that the self-petitioner's "contributions also include the development of a realistic and comprehensive model for squeeze film damper (SFD) behavior," and that he "has made the aforementioned discoveries using his unique set of analytical and mechanical skills." Nevertheless, Doctor Fatima failed to provide any objective documentary evidence or specific information to show that both fields have advanced through the self-petitioner's design of SFD's or that the self-petitioner's research has been of national importance. Also, Doctor Fatima did not provide any objective documentary evidence to show that the self-petitioner's work on SFD's is of significant greater importance than other SFD research introduced prior to and after the self-petitioner's work was introduced to the field of endeavor, some of which has been patented research.

Professor Fatima also stated that the significance of the self-petitioner's "advanced skillset is evidenced by the fact that his findings have been published by such competitive and esteemed outlet as *American Society of Mechanical Engineers (ASME) Turbo Expo* and *Rotating Machinery and Controls Consortium (ROMAC) Annual Meeting.*" Publication alone is not a gauge of impact. Rather, citations are a reliable statistic in evaluating the impact of those articles. Professor Fatima and the self-petitioner did not provide any objective documentary evidence or additional evidence to show that the field of endeavor's reaction to the self-petitioner's articles distinguished him from his peers.

Vahe Hayrapetian, P.E., Principal Engineer, GTEC-Vernon, Flowserve Corporation, stated in part:

> …My familiarity with Dr. Dousti stems largely from my attendance at the annual meetings of the Rotating Machinery and Controls (ROMAC)…Although I am familiar with several of Dr. Dousti's innovative approaches to rotordynamics, I will limit my discussion to his advancements concerning water and low viscosity bearings. Though they offer a cost-effective and ecofriendly alternative to oil-based lubricants, water and low viscosity bearing lubricants pose several challenges in terms of practical implementation. These challenges largely stem from the fact that these non-oil-based lubricants produce high Reynolds numbers and reduced Reynolds numbers, which are associated with high turbulence and inertia effects. In order to properly predict their behavior in rotating systems, an equation accounting for turbulence and inertia is required. Because no such equation existed at the time, Dr. Dousti sought to realize one…Dr. Dousti also developed a formula for determining the effects of convective inertia on bearings. By modeling the complex effects of turbulence and inertia on rotating machinery bearings in this way, Dr. Dousti's expanded Reynolds equation enables the accurate prediction of water and low viscosity lubricants. Dr. Dousti's introduction of this equation has redefined the practical utility of lubricants with high Reynolds numbers. He has provide the field with the means necessary to predict the behavior of these nonconventional lubricants in rotating machinery, thus speeding along the

Receipt No. SRC1690240460
Page 5

development of advanced rotating machineries with a reduced reliance upon costly, destructive oil-based lubricants.

However, Mr. Hayrapetian did not provide the title of the publication through which the self-petitioner is claimed to have made "advancements" to the field of endeavor. Though Mr. Hayrapetian's admiration and support for the self-petitioner and his work are evident, the evidence in the record does not show that the self-petitioner's research has indeed been adopted by other researchers in the mechanical engineering or environmental fields or that his research work on low viscosity lubricants has indeed improved the mechanical engineering field. Also, a review of the Google Scholar screen print submitted as part of the evidence shows that the self-petitioner had not gathered much attention from the research community as his research work had not been cited by many researchers. This is especially true since Mr. Hayrapetian's statement states that the self-petitioner "has certainly drawn the interest of researchers throughout the field who seek to design improved rotating machinery." Mr. Hayrapetian's statements fail to show the substantial merit and national importance of the self-petitioner's proposed endeavor.

Doctor Edmund A. Memmott, Principal Rotor Dynamics Engineer, Core Technology US, Dresser-Rand Company, stated in part:

> ...Though I have not collaborated with Dr. Dousti, my employer is a long-time member of the Rotating Machinery and Controls (ROMAC) Industrial Program at the University of Virginia. As such, I have regularly attended the ROMAC annual meetings, presented papers at those meetings and every summer since 2010 have lectured at the ROMAC Advanced Rotordynamics and Magnetic Bearings Short Course at the University of Virginia...One of Dr. Dousti's research endeavors concerns the prediction of lubricant behavior in the journal bearings of rotors. The behavior of lubricants is traditionally predicted by calculating the Reynolds number. However, the Reynolds equation does not account for inertia effects or turbulence, meaning that it is exclusively useful for conventional oil-based lubricants with high viscosity. In the case of a low viscosity lubricant like water and with oil mixed with carbon dioxide, a more comprehensive equation is necessary. Dr. Dousti addressed this need by extending the Reynolds equation to include temporal inertia, convective inertia, and turbulence effects in finite length radial journal bearings. By incorporating these important features of low viscosity lubricants, Dr. Dousti introduced a new method of predicting lubricant behavior beyond the scope of oil-based, high viscosity lubricants. He additionally identified and described a previously unknown contributor to damping in rotating systems, which he dubbed "secondary inertia."...Dr. Dousti developed an enhanced method for modeling the behavior of squeeze film dampers (SFDs). SFDs are used in series with the journal bearings that support the rotors. SFDs play a vital role in damping vibrational levels and stabilizing the rotor-bearing system...Dr. Dousti's inventive models of lubricant and SFD behaviors in rotor-bearing-support systems have made a visible mark on the design and development of rotor-bearing-support technologies...

Doctor Edmund further stated "Given his highly advanced insight into the mechanical properties and behaviors of rotor-bearing-support systems, Dr. Dousti would be a difficult researcher to replace. He is working at a high level amongst his peers in rotordynamics, as evidenced by his record of refining longstanding equations and models. This expertise marks Dr. Dousti as an invaluable asset to the United States, as his improved rotordynamics models can lead to the improvement for several technologies, such as centrifugal compressors and airplane jet engines." However, the evidence in the record does not show that the self-petitioner's research has been adopted by any of the aforementioned fields of endeavor or that his research work has served as the foundation for advancing any of those fields. Doctor Edmund like the other individuals who issued reference letters on behalf of the self-petitioner, did not provide the name for the self-petitioner's publications that have helped "advance" the field of endeavor or that of substantial merit and national importance to the mechanical engineering or environmental field.

Going on record without supporting documentary evidence is not sufficient for the purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Assoc. Comm'r 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg'l Comm'r 1972)).

The burden of proof is on the petitioner to show eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

Thus, it cannot be determined based on the statements above and the evidence in the record that a substantial merit exists or that the self-petitioner's proposed endeavor is of national importance in the U.S. as stated in those statements.

The self-petitioner has not provided any evidence that his work renders benefits that extend beyond the educational institution he attended, the business organization that employs him, or the impact that his work has had in the mechanical engineering or environmental fields more broadly. As the self-petitioner has not established that his work has made an impact on the specific endeavor, and the record does not support a finding of national importance, he has not met the first prong of the *Dhanasar* framework.

B.  Well Positioned to Advance the Proposed Endeavor

The second prong shifts the focus from the proposed endeavor to the self-petitioner's qualifications. The self-petitioner submitted his academic credentials and reference letters from his friends and colleagues.

The self-petitioner's statement states in part:

> …Dr. Dousti's original contributions…prove that he has made and continues to make significant contributions to the national interest. He has a remarkable history of exceptional results in increasing the scientific understanding of rotor-bearing-support systems and effectual rotating machinery development, which are supported by his strong background in mechanical engineering, solid mechanics, and rotordynamics. His specific contributions are above what can be expected from others with similar education and experience; this consistent, documented record of discoveries and breakthroughs suggests that he will continue making substantial contributions to the field of endeavor…<u>Dr. Dousti possesses unique and innovative skills, knowledge, and background that serve the</u> national interest. Dr. Dousti has a tremendous and unique set of skills, knowledge, and diverse background that ideally positions him for current and future work in the field of endeavor. His impressive skills pan from rotordynamic analysis to fluid film bearing design and development. Dr. Dousti has an outstanding ability to get to the core of problems, solving many key issues pertinent to the improvement of rotating machinery dynamics, as recounted by preeminent scientists in his field…(emphasis on original).

As noted above, the self-petitioner has not demonstrated that his proposed endeavor meets the "substantial merit and national importance" element of the *Dhanasar* framework's first prong. In addition, a review of the self-petitioner's Google Scholar page shows even though he did publish his research work through 2016, his articles have not gathered the attention of the research community. This is important considering the self-petitioner's references stated he has "strongly influenced his fellow researchers throughout the mechanical engineering field" and "has made particularly impressive progress concerning the modeling of lubricant behaviors in rotating machinery." This information brings into question whether the self-petitioner is well-positioned to advance the proposed endeavor.

Because the self-petitioner's proposed duties as a researcher do not meet the first prong of the *Dhanasar* framework, the analysis under this prong will focus on whether he is well positioned to advance his proposed endeavor.

Receipt No. SRC1690240460
Page 7

With respect to his research work, the self-petitioner asserts that his "outstanding accomplishments and abilities demonstrate his capacity to perform at a level significantly above that of others with similar education and experience. In recognition of his international expertise, [he] has been published in internationally-circulated journals and has been extensively cited…[his] position at the top of his field, and therefore his ability to serve the field better than a minimally qualified replacement, is attested to by several renowned scientists working in his field of endeavor and related fields…" Yet, the evidence in the record does not include any objective documentary evidence to show that this has indeed occurred. The self-petitioner's statement further states that "His collected works have amassed **17 citations**, affirming the broad influence of his published findings across the wider scientific community," but no objective documentary evidence was submitted to show that this is indeed true. The evidence in the record does not show that he has influenced other researchers in the specific field of endeavor through the publication of his work, or that he is well positioned to advance the proposed endeavor.

In their letters of support, the self-petitioner's colleagues and friends state that "With respect to the groundbreaking nature of his findings, it should come as no surprise that Dr. Dousti has established himself as an authoritative voice in the design of advanced rotors. His published work has been cited over 20 times to date, an admirable figure in the context of our specialized field." However, no objective documentary evidence was submitted to show that the self-petitioner's research has indeed influenced the mechanical engineering or environmental fields and thus, that he is well positioned to advance the field of endeavor. In evaluating the evidence, the truth is to be determined not by the quantity of evidence alone but by its quality. *See Matter of Chawathe*, 25 I&N Dec. 369, 376 (AAO 2010). USCIS may, in its discretion, use as advisory opinions statements submitted as expert testimony. *See Matter of Caron International*, 19 I&N Dec. 791, 795 (Comm'r 1988). However, USCIS is ultimately responsible for making the final determination regarding an individual's eligibility for the benefit sought. *Id.*

The record shows the self-petitioner has conducted, published, and presented research work during the past six years, and even though USCIS recognizes that research must add information to the pool of knowledge in some way in order to be accepted for publication, presentation, funding, or academic credit, not every individual who has performed original research will be found to be well positioned to advance his or her proposed endeavor. Rather, USCIS examines the factors set forth in *Dhanasar* to determine whether, for instance, the individual's progress towards achieving the goals of the proposed research, record of success in similar efforts, or generation of interest among relevant parties supports such a finding. *Id.* at 890.

The self-petitioner has not shown that his research has been frequently cited by independent researchers in the mechanical engineering or environmental fields or otherwise served as an impetus for progress in the field, that it has affected the field, or that it has generated substantial positive discourse in the broader research community. The evidence in the record also fails to otherwise demonstrate that his work constitutes a record of success or progress in his area of research. The burden of proof is on the petitioner to show eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

Going on record without supporting documentary evidence is not sufficient for the purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Assoc. Comm'r 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg'l Comm'r 1972)).

In sum, the self-petitioner has not demonstrated a record of success or progress in his field, or a degree of interest in his work from relevant parties, that rise to the level of rendering him well positioned to advance his proposed endeavor of conducting research aimed at improving the mechanical engineering or environmental field. As the record is insufficient to demonstrate that the self-petitioner is well positioned to advance his proposed endeavor, he has not established that he satisfies the second prong of the *Dhanasar* framework.

   C.  Balancing Factors to Determine Waiver's Benefit to the United States.

Receipt No. SRC1690240460
Page 8

The third prong requires the self-petitioner to demonstrate that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. Here, the self-petitioner claims that he is eligible for a waiver due to his accomplishments, for which he claims he is far more qualified than other similarly educated scholars with the same minimum education and experience.

Nevertheless, as the self-petitioner has not established that a substantial merit and national importance of the proposed endeavor exists, or that he is well positioned to advance his proposed endeavor as required by the first and second prong of the *Dhanasar* framework, he is not eligible for a national interest waiver and further discussion of the balancing factors under the third prong would serve no meaningful purpose.

The evidence in the record further does not show that the self-petitioner is eligible for second preference classification through the national interest waiver process.

CONCLUSION

As the self-petitioner has not met the requisite three prongs set forth in the *Dhanasar* analytical framework, USCIS finds that he has not established eligibility for or otherwise merits a national interest waiver as a matter of discretion.

Based upon the above reasons, you are hereby notified that it is the intent of USCIS to revoke Form I-140. You have 30 (thirty) days (33 days if this notice was received by mail) to submit any other evidence it deems appropriate in support of Form I-140. USCIS will carefully review any evidence that the petitioner submits.

If the petitioner fails to submit evidence in support of Form I-140, or fails to respond to this NOIR, USCIS may revoke the approval of Form I-140 based upon the reasons set forth in this NOIR.

Pursuant to Section 291 of the INA, whenever any person makes an application for an immigration benefit, they shall bear the burden of proof to establish eligibility. Accordingly, the petitioner must prove by a preponderance of the evidence, in other words, that it is more likely than not, that the beneficiary is fully qualified for the benefit sought. *See Matter of E-M-*, 20 I & N Dec. 77 (Comm. 1989). After a careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought. As a result, USCIS intends to revoke the approval of Form I-140 as of the date of approval.

Sincerely,

Gregory A. Richardson, Director
Texas Service Center

Officer# XM1243

cc.:   Saeid Dousti
       2541 Avemore Pond Rd.
       Charlottesville, VA 22911-7235



Exhibit 2

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



**U.S. Citizenship
and Immigration
Services**

TO:
**Victoria Chen, Esq.
N. America Immigration Law Group
2723 S. State St., Ste. 150
Ann Arbor, MI 48104**

**DATE: July 2, 2018**

**Petition: Form I-140**

| | |
|---|---|
| **File Number:** | **SRC1690244939 / A208859346** |
| **Beneficiary:** | |
| | **Saeid DOUSTI** |

### NOTICE OF REVOCATION OF IMMIGRANT PETITION

Your Form I-140, Immigrant Petition for Alien Worker, has been revoked for the following reason(s):

See Attachment

You may appeal this decision to the Administrative Appeals Office.  Your appeal must be filed on Form I-290B, Notice of Appeal or Motion within 15 days of the date of this notice (18 days if this notice is received by mail).

In the alternative, you may file a motion to reopen or reconsider. Your motion to reopen or reconsider must be filed on Form I-290B within 30 days of the date of this notice (33 days if this notice is received by mail). For the latest information on filing location, fee, and other requirements, please review the Form I-290B instructions at http://www.uscis.gov/forms, call our National Customer Service Center at 1-800-375-5283, or visit your local USCIS office.  If USCIS does not receive a properly filed appeal or motion, this decision will become final.

This decision does not prevent you from filing any petition or application in the future.

Sincerely,

Gregory A. Richardson, Director
Texas Service Center

Officer XM 1243

cc.:    Saeid Dousti
        2541 Avemore Pond Rd.
        Charlottesville, VA 22911-7235

ATTACHMENT

Reference is made to Immigrant Petition for Alien Worker (Form I-140) filed by Saeid Dousti, the self-petitioner, on May 16, 2016, on his own behalf, in accordance with Section 203(b)(2)(B)(i) of the Immigration and Nationality Act (Section 203(b)(2)(B)(i) of the INA), to perform the services of Postdoctoral Research Associate.  U.S. Citizenship and Immigration Services (USCIS) approved Form I-140 on June 18, 2016.

After a review of the petition and all of the supporting evidence it appears that USCIS approved Form I-140 in error. Therefore, USCIS hereby seeks to revoke the approval of Form I-140.

Section 205 of the INA states that the Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under Section 204 of the INA.  Such revocation shall be effective as of the date of approval of any such petition.

In addition, 8 Code of Federal Regulations Section 205.2(a) [8 C.F.R. Section 205.2(a)] states that any Service (now USCIS) officer authorized to approve a petition under Section 204 of the INA may revoke the approval of that petition upon notice to the petitioner on any ground other than those specified in Section 205.1 when the necessity for the revocation comes to the attention of this Service (now USCIS).

The realization that an immigrant visa petition was approved in error constitutes good and sufficient cause for revoking its approval.  A notice of intent to revoke the visa petition is properly issued for "good and sufficient cause" when the evidence of record at the time of issuance, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof.  *See Matter of Ho*, 19 I&N Dec. 582 (BIA 1988) and *Matter of Estime*, 19 I&N Dec. 450 (BIA 1987).

In addition, a revocation can only be grounded upon, and the petitioner is only obliged to respond to, the allegations in the Notice of Intent to Revoke (NOIR). *Matter of Arias*, 19 I&N Dec. 568 (BIA 1988).

The petitioner must establish that it has satisfied each adjudicative element to establish eligibility for the requested benefit.  If there are any issues which the petitioner fails to overcome, then each of those issues forms a separate basis for the revocation.  In this case, the following issues independently form the basis for this revocation and will be discussed in this notice:

- The substantial merit and national importance of the proposed endeavor;
- Whether the self-petitioner is well positioned to advance the proposed endeavor; and
- Whether the balancing factors determine the self-petitioner's waiver benefits the United States.

On May 2, 2018, USCIS sent the petitioner a Notice of Intent to Revoke (NOIR), notifying the petitioner of the deficiencies in the record as discussed below. The petitioner was afforded thirty (30) days (thirty-three (33) days if the notice was received by mail) in which to respond to USCIS NOIR. The petitioner's response was received on May 29, 2018.

Section 203(b) of the Act sets out this sequential framework:

(2) Aliens who are members of the professions holding advanced degrees or aliens of exceptional ability. –

(A) In general. - Visas shall be made available ... to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and

whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

(B) Waiver of job offer –

(i) National interest waiver. ... [T]he Attorney General may, when the Attorney General deems it to be in the national interest waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

While neither the statute nor the pertinent regulations define the term "national interest" the Administrative Appeals Office (AAO) recently set forth a new framework for adjudicating national interest waiver petitions. *See Dhanasar*, 26 I&N Dec. 884 (AAO 2016).[1] *Dhanasar* states that after EB-2 eligibility has been established, USCIS may, as a matter of discretion, grant a national interest waiver when the below prongs are met.

The first prong, substantial merit and national importance, focuses on the specific endeavor that the foreign national proposes to undertake. The endeavor's merit may be demonstrated in a range of areas such as business, entrepreneurialism, science, technology, culture, health, or education. In determining whether the proposed endeavor has national importance, USCIS considers its potential prospective impact.

The second prong shifts the focus from the proposed endeavor to the foreign national. To determine whether he or she is well positioned to advance the proposed endeavor, USCIS considers factors including, but not limited to: the individual's education, skills, knowledge and record of success in related or similar efforts; a model or plan for future activities; any progress towards achieving the proposed endeavor; and the interest of potential customers, users, investors, or other relevant entities or individuals.

The third prong requires the petitioner to demonstrate that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. In performing this analysis, USCIS may evaluate factors such as: whether, in light of the nature of the foreign national's qualifications or the proposed endeavor, it would be impractical either for the foreign national to secure a job offer or for the petitioner to obtain a labor certification; whether, even assuming that other qualified U.S. workers are available, the United States would still benefit from the foreign national's contributions; and whether the national interest in the foreign nationals contributions is sufficiently urgent to warrant forgoing the labor certification process. In each case, the factor(s) considered must, taken together, indicate that on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification.

The self-petitioner possesses a doctor of philosophy degree in mechanical and aerospace engineering from The University of Virginia. The issues in contention are whether the self-petitioner has established that a substantial merit and national importance of the proposed endeavor exists, whether he is well positioned to advance the proposed endeavor, and whether a waiver of the job offer requirement, and thus a labor certification, is in the national interest.

A. Substantial Merit and National Importance of the Proposed Endeavor

At the time of filing, the self-petitioner stated in part:

Dr. Dousti is currently employed as a Senior Technical Fellow at Rotor Bearing Solutions International, LLC. In this position, he conducts rotordynamic analyses, improves fluid

---

[1] In announcing this new framework, the AAO vacated its prior precedent decision, *Matter New York State Department Transportation*, 22 I&N Dec. 215 (Act. Assoc. Comm'r 1998) *(NYSDOT)*.

> film designs and fluid film bearing computer program development, and enhances active extreme importance, because it will **increase the efficiency and heighten the overall performance of bearing-supported equipment. This equipment is exceedingly valuable and integral in the design and construction of widely employed rotating equipment requisite for machinery as widespread as centrifugal compressors, steam turbines, computer components, gears, and even airplane jet engines. Through his incisive investigations of viable methods through which to enhance bearing technologies, Dr. Dousti is contributing to industrial advancements that benefit the nation in terms of cost efficiency, performance, environmental cleanliness**…The impact of Dr. Dousti's unique work on rotordynamcs and high speed bearing-supported systems is particularly important for replacing conventional rotors via cost-effective means, as well as for attaining ecofriendly alternatives to rotating machinery equipment. Dousti has been making the design and subsequent implementation of active magnetic bearings a reality and building foundational knowledge in the research community. (Emphasis on original).

To satisfy the national importance requirement, the self-petitioner must demonstrate the "potential prospective impact" of his work. He asserts that his "**continued research has substantial benefits for our country and the research community as a whole**" (emphasis on original) because he "has contributed and will continue to contribute to the attainment of environmentally clean and highly efficient bearing designs that move the field of mechanical engineering forward, advancing rotordynamic technology to an entirely unprecedented level," but he did not discuss the breadth of those implications that his research work has, and he did not provide objective documentary evidence to support his statements.

The self-petitioner has not established that his proposed work has implications beyond the educational institution he attended or the business organization that employs him; at a level sufficient to establish the national importance of his endeavor.[2] For example, the record does not show that the specific work he proposes to undertake, offers original innovations that advance the field of mechanical engineering or the specific field the self-petitioner intends to undertake,[3] or otherwise has broader implications in the mechanical engineering or environmental field.

The evidence in the record included statements from five of the self-petitioner's colleagues and one independent advisor. Shahab Fatima, Ph.D., DST Inspire Fellow, Industrial Tribology, Machine Dynamics and Maintenance Engineering Centre (ITMMEC), Indian Institute of Technology Delhi, stated in part:

> …I am a fellow mechanical engineer with a particular focus on rotating machinery…One way in which Dr. Dousti has impacted our mutual field is by introducing a novel permanent bias active magnetic bearing design. In rotating machinery, bearings allow the system to run smoothly, resist shock loads, and achieve extended lifespans. Because of this central role in system performance, understanding bearing behavior is an important method of improving rotating machinery designs. Additionally, because many conventional bearings use oils and other contaminants for lubrication, understanding bearing behavior in the absence of these components is a much-needed step toward increasing the environmental friendliness and production efficiency of rotating machinery. Dr. Dousti made noteworthy progress on both of these fronts by designing an alternative bearing based on permanent magnets. This bearing design entirely eliminates the need for lubrication, thus solving the issue of environmental contamination. It further

---

[2] In *Dhanasar*, the AAO determined that the petitioner's teaching activities did not rise to the level of having national importance because they would not impact his field more broadly. *Id.* at 893.

[3] The self-petitioner stated in his original statement that his proposed endeavor is mechanical engineering, but he will also contribute to the environmental field as well.

utilizes only permanent magnets and coils for stabilization and magnetic force, meaning that it is simultaneously small in size, facile and affordable to produce, and able to consume negligible amounts of power. Beyond these notable economic and environmental benefits, Dr. Dousti's use of permanent magnets also offers enhanced reliability and performance speed. By designing this innovative bearing, Dr. Dousti has taken a critical step toward replacing fluid film bearings in rotating machinery.

Doctor Fatima further stated that the self-petitioner's "contributions also include the development of a realistic and comprehensive model for squeeze film damper (SFD) behavior," and that he "has made the aforementioned discoveries using his unique set of analytical and mechanical skills." Nevertheless, Doctor Fatima failed to provide any objective documentary evidence or specific information to show that both fields have advanced through the self-petitioner's design of SFD's or that the self-petitioner's research has been of national importance. Also, Doctor Fatima did not provide any objective documentary evidence to show that the self-petitioner's work on SFD's is of significant greater importance than other SFD research introduced prior to and after the self-petitioner's work was introduced to the field of endeavor, some of which has been patented research.

Professor Fatima also stated that the significance of the self-petitioner's "advanced skillset is evidenced by the fact that his findings have been published by such competitive and esteemed outlet as *American Society of Mechanical Engineers (ASME) Turbo Expo* and *Rotating Machinery and Controls Consortium (ROMAC) Annual Meeting*." Publication alone is not a gauge of impact. Rather, citations are a reliable statistic in evaluating the impact of those articles. Professor Fatima and the self-petitioner did not provide any objective documentary evidence or additional evidence to show that the field of endeavor's reaction to the self-petitioner's articles distinguished him from his peers.

Vahe Hayrapetian, P.E., Principal Engineer, GTEC-Vernon, Flowserve Corporation, stated in part:

> …My familiarity with Dr. Dousti stems largely from my attendance at the annual meetings of the Rotating Machinery and Controls (ROMAC)…Although I am familiar with several of Dr. Dousti's innovative approaches to rotordynamics, I will limit my discussion to his advancements concerning water and low viscosity bearings. Though they offer a cost-effective and ecofriendly alternative to oil-based lubricants, water and low viscosity bearing lubricants pose several challenges in terms of practical implementation. These challenges largely stem from the fact that these non-oil-based lubricants produce high Reynolds numbers and reduced Reynolds numbers, which are associated with high turbulence and inertia effects. In order to properly predict their behavior in rotating systems, an equation accounting for turbulence and inertia is required. Because no such equation existed at the time, Dr. Dousti sought to realize one…Dr. Dousti also developed a formula for determining the effects of convective inertia on bearings. By modeling the complex effects of turbulence and inertia on rotating machinery bearings in this way, Dr. Dousti's expanded Reynolds equation enables the accurate prediction of water and low viscosity lubricants. Dr. Dousti's introduction of this equation has redefined the practical utility of lubricants with high Reynolds numbers. He has provide the field with the means necessary to predict the behavior of these nonconventional lubricants in rotating machinery, thus speeding along the development of advanced rotating machineries with a reduced reliance upon costly, destructive oil-based lubricants.

However, Mr. Hayrapetian did not provide the title of the publication through which the self-petitioner is claimed to have made "advancements" to the field of endeavor. Though Mr. Hayrapetian's admiration and support for the self-petitioner and his work are evident, the evidence in the record does not show that the self-petitioner's research has indeed been adopted by other researchers in the mechanical engineering or environmental fields or that his research work on low viscosity lubricants has indeed improved the mechanical engineering field. Also, a review of the Google Scholar screen print submitted as part of the evidence shows that the self-petitioner had not gathered much attention from the research community as his

Receipt No. SRC1690244939
Page 6

research work had not been cited by many researchers. This is especially true since Mr. Hayrapetian's statement states that the self-petitioner "has certainly drawn the interest of researchers throughout the field who seek to design improved rotating machinery." Mr. Hayrapetian's statements fail to show the substantial merit and national importance of the self-petitioner's proposed endeavor.

Doctor Edmund A. Memmott, Principal Rotor Dynamics Engineer, Core Technology US, Dresser-Rand Company, stated in part:

> …Though I have not collaborated with Dr. Dousti, my employer is a long-time member of the Rotaing Machinery and Controls (ROMAC) Industrial Program at the University of Virginia. As such, I have regularly attended the ROMAC annual meetings, presented papers at those meetings and every summer since 2010 have lectured at the ROMAC Advanced Rotordynamics and Magnetic Bearings Short Course at the University of Virginia…One of Dr. Dousti's research endeavors concerns the prediction of lubricant behavior in the journal bearings of rotors. The behavior of lubricants is traditionally predicted by calculating the Reynolds number. However, the Reynolds equation does not account for inertia effects or turbulence, meaning that it is exclusively useful for conventional oil-based lubricants with high viscosity. In the case of a low viscosity lubricant like water and with oil mixed with carbon dioxide, a more comprehensive equation is necessary. Dr. Dousti addressed this need by extending the Reynolds equation to include temporal inertia, convective inertia, and turbulence effects in finite length radial journal bearings. By incorporating these important features of low viscosity lubricants, Dr. Dousti introduced a new method of predicting lubricant behavior beyond the scope of oil-based, high viscosity lubricants. He additionally identified and described a previously unknown contributor to damping in rotating systems, which he dubbed "secondary inertia."…Dr. Dousti developed an enhanced method for modeling the behavior of squeeze film dampers (SFDs). SFDs are used in series with the journal bearings that support the rotors. SFDs play a vital role in damping vibrational levels and stabilizing the rotor-bearing system…Dr. Dousti's inventive models of lubricant and SFD behaviors in rotor-bearing-support systems have made a visible mark on the design and development of rotor-bearing-support technologies…

Doctor Edmund further stated "Given his highly advanced insight into the mechanical properties and behaviors of rotor-bearing-support systems, Dr. Dousti would be a difficult researcher to replace. He is working at a high level amongst his peers in rotordynamics, as evidenced by his record of refining longstanding equations and models. This expertise marks Dr. Dousti as an invaluable asset to the United States, as his improved rotordynamics models can lead to the improvement for several technologies, such as centrifugal compressors and airplane jet engines." However, the evidence in the record does not show that the self-petitioner's research has been adopted by any of the aforementioned fields of endeavor or that his research work has served as the foundation for advancing any of those fields. Doctor Edmund like the other individuals who issued reference letters on behalf of the self-petitioner, did not provide the name for the self-petitioner's publications that have helped "advance" the field of endeavor have been of substantial merit and national importance to the mechanical engineering or environmental field.

In response to the NOIR the self-petitioner submitted three additional letters of support. Dr. Tadayoshi Shoyama, Staff Engineer, Panasonic Corporation, Moriguchi, Osaka, Japan, stated in part:

> Dr. Dousi's work first came to my attention when I was in the process of developing a squeeze film damper (SFD) for use in water bearing lubrication in a series of turbocompressors we are developing at Panasonic. My proposed SFD was unique since it used water as the lubricant and also utilized double clearances separated with a floating ring. This meant that it was further prone to exhibit complicated nonlinear behaviors and sub-synchronous vibrations. These unique features meant that my SFD was quite difficult to analyze using conventional methods. I decided to contact Rotor Bearing Solutions to see if they had any analytical frameworks that I could apply to this problem. When I contacted

Receipt No. SRC1690244939
Page 7

> Rotor Bearing Solutions, I was referred to Dr. Dousti's research on SFD behavior and analysis as a solution to my problem. I read Dr. Dousti's work with great interest, as his results and methods overlapped strongly with several observations I made during my own R&D work…Dr. Dousti's research was useful to this study in several respects. First, I was employing a method of analysis that was a very similar to one that was utilized in Dr. Dousti's published research, so I use his work as a building block for my method. I specifically noted that similar approach for my analysis. Second, I noted that Dr. Dousti's inertia modeling method was useful for increasing the accuracy of my analysis. I also found Dr. Dousti's work useful for two related papers I published in *Mechanical Engineering Journal* and *Polymer Testing*. Together, these papers presented my experimental evaluations of elastomer rubbers commonly used for vibration suppression in high-speed turbocompressors.

A review of Dr. Shoyama's curriculum vitae shows he has published two papers, has presented his work at six conferences, has been issued three patents, and has submitted applications for two additional patents. Dr. Shoyama's curriculum further shows the papers he published in Polymer Testing and Mechanical Engineering Journal were published in 2018, two years after Form I-140 was filed. A review of Dr. Shoyama's Google Scholar's profile shows neither publication has gathered any attention from the research community. According to the Google Scholar profile, Dr. Shoyama published twenty-two papers between 2006 and 2018, but only six have been cited a total of nine times, all citations are self-citations. Dr. Shoyama did not provide any objective documentary evidence to show his research work serves as evidence of the substantial intrinsic merit and national importance self-petitioner's research work. Thus, it cannot be determined based on his statements alone that the self-petitioner's research work has impacted or that it has potential prospective impact in the mechanical engineering and environmental fields.

Moreover, in his May 16, 2016 statement, the self-petitioner explained how he, through the organization that employs him, helped develop HydroSol, a computer code "design[ed] to accommodate and analyze both horizontal and vertical water bearings used very commonly in water pumps. Special editions of this computer program have been requested in a contract by the Japanese company, Panasonic. The first Panasonic special edition of HydroSol, released in 2017, was designed to handle their unique tri-lobe geometry. In a continuation of this project, Panasonic has requested a new special edition of HydroSol to accommodate the recess pockets and axial groove features in a larger water bearing in their new turbocompressor." No objective documentary evidence was submitted to show that the self-petitioner's development of a computer code under contract labor with Panasonic is evidence that his research work has been the basis for the substantial intrinsic merit and national importance brought to the mechanical engineering and environmental fields. If testimonial evidence lacks specificity, detail, or credibility, there is a greater need for the petitioner to submit corroborative evidence. *Matter of Y-B-*, 21 I&N Dec. 1136 (BIA 1998).

The self-petitioner also submitted a May 16, 2018 statement from Vahe Hayrapetian, in support of his previous statement. Mr. Hayrapetian stated in his statement that "Dr. Dousti's work provided guidance for Wang et al. that was similar to the guidance he provided for Xu and Jiang's study…" However, Mr. Hayrapetian did not provide the name of "Wang et al.'s" publication or any information to show that their citation of the self-petitioner's work is objective independent documentary evidence that his work has been of substantial merit and national importance to the mechanical engineering and environmental fields. A review of the references page in Xu and Jiang's publication, submitted in response to the NOIR, shows that the self-petitioner's 2012 publication is listed as reference twenty-five out of twenty-nine references. No objective documentary evidence was submitted to show that the self-petitioner's publication was of greater influence or that it had a greater substantial intrinsic merit and national importance in the mechanical engineering and environmental fields than the other publications.

If U.S. Citizenship and Immigration Services (USCIS) finds reason to believe that an assertion of fact stated in the petition is not true, USCIS may reject that assertion. Section 204(b) of the Act, 8 U.S.C. § 1154(b); *see*

Receipt No. SRC1690244939
Page 8

*also Anetekhai v. INS*, 876 F.2d 1218, 1220 (5th Cir.1989); *Lu-Ann Bakery Shop, Inc. v. Nelson*, 705 F. Supp. 7, 10 (D.D.C.1988); *Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 15 (D.D.C. 2001).

Going on record without supporting documentary evidence is not sufficient for the purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Assoc. Comm'r 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg'l Comm'r 1972)).

The burden of proof is on the petitioner to show eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

Thus, it cannot be determined based on the statements above and the evidence in the record that a substantial merit exists or that the self-petitioner's proposed endeavor is of national importance in the U.S. as stated in those statements.

The self-petitioner has not provided any evidence that his work renders benefits that extend beyond the educational institution he attended, the business organization that employs him, or the impact that his work has had in the mechanical engineering or environmental fields more broadly. As the self-petitioner has not established that his work has made an impact on the specific endeavor, and the record does not support a finding of national importance, he has not met the first prong of the *Dhanasar* framework.

B.  Well Positioned to Advance the Proposed Endeavor

The second prong shifts the focus from the proposed endeavor to the self-petitioner's qualifications. The self-petitioner submitted his academic credentials and reference letters from his friends and colleagues.

The self-petitioner's statement states in part:

> …Dr. Dousti's original contributions…prove that he has made and continues to make significant contributions to the national interest. He has a remarkable history of exceptional results in increasing the scientific understanding of rotor-bearing-support systems and effectual rotating machinery development, which are supported by his strong background in mechanical engineering, solid mechanics, and rotordynamics. His specific contributions are above what can be expected from others with similar education and experience; this consistent, documented record of discoveries and breakthroughs suggests that he will continue making substantial contributions to the field of endeavor…Dr. Dousti possesses unique and innovative skills, knowledge, and background that serve the national interest. Dr. Dousti has a tremendous and unique set of skills, knowledge, and diverse background that ideally positions him for current and future work in the field of endeavor. His impressive skills pan from rotordynamic analysis to fluid film bearing design and development. Dr. Dousti has an outstanding ability to get to the core of problems, solving many key issues pertinent to the improvement of rotating machinery dynamics, as recounted by preeminent scientists in his field…(emphasis on original).

As noted above, the self-petitioner has not demonstrated that his proposed endeavor meets the "substantial merit and national importance" element of the *Dhanasar* framework's first prong. In addition, a review of the self-petitioner's Google Scholar page shows even though he did publish his research work through 2016, his articles have not gathered the attention of the research community. This is important considering the self-petitioner's references stated he has "strongly influenced his fellow researchers throughout the mechanical engineering field" and "has made particularly impressive progress concerning the modeling of lubricant behaviors in rotating machinery." This information brings into question whether the self-petitioner is well-positioned to advance the proposed endeavor.

Receipt No. SRC1690244939
Page 9

Because the self-petitioner's proposed duties as a researcher do not meet the first prong of the *Dhanasar* framework, the analysis under this prong will focus on whether he is well positioned to advance his proposed endeavor.

With respect to his research work, the self-petitioner asserts that his "outstanding accomplishments and abilities demonstrate his capacity to perform at a level significantly above that of others with similar education and experience. In recognition of his international expertise, [he] has been published in internationally-circulated journals and has been extensively cited…[his] position at the top of his field, and therefore his ability to serve the field better than a minimally qualified replacement, is attested to by several renowned scientists working in his field of endeavor and related fields…" Yet, the evidence in the record does not include any objective documentary evidence to show that this has indeed occurred. The self-petitioner's statement further states that "His collected works have amassed **17 citations**, affirming the broad influence of his published findings across the wider scientific community," but no objective documentary evidence was submitted to show that this is indeed true. The evidence in the record does not show that he has influenced other researchers in the specific field of endeavor through the publication of his work, or that he is well positioned to advance the proposed endeavor.

In their letters of support, the self-petitioner's colleagues and friends state that "With respect to the groundbreaking nature of his findings, it should come as no surprise that Dr. Dousti has established himself as an authoritative voice in the design of advanced rotors. His published work has been cited over 20 times to date, an admirable figure in the context of our specialized field." However, no objective documentary evidence was submitted to show that the self-petitioner's research has indeed influenced the mechanical engineering or environmental fields and thus, that he is well positioned to advance the field of endeavor. In evaluating the evidence, the truth is to be determined not by the quantity of evidence alone but by its quality. *See Matter of Chawathe*, 25 I&N Dec. 369, 376 (AAO 2010). USCIS may, in its discretion, use as advisory opinions statements submitted as expert testimony. *See Matter of Caron International*, 19 I&N Dec. 791, 795 (Comm'r 1988). However, USCIS is ultimately responsible for making the final determination regarding an individual's eligibility for the benefit sought. *Id.*

The statement from Vahe Hayrapetian, Principal Engineer, GTEC-Vernon, Flowserve Corporation, Vernon, California, states in part:

> At the outset, I would first like to confirm that Dr. Dousti's work has been of use to me in my capacity as a Senior Engineer at Flowserve Corporation…The bearing of vertical water pumps are a unique technology, since there is no side pull from gravity to help keep the bearing loaded and stable. This means that conventional means for analyzing horizontal oil bearings are not useful for vertical pumps. I therefore needed to procure an accurate methodology for the analysis of our vertical bearings in pumps, which is why I reached out to Dr. Dousti in April of 2016… Dr. Dousti's work carries value that extends beyond my own research. Dr. Dousti has extended the application of the Reynolds equation in important new directions, and researchers in the field have used his work as a basis for utilizing the Reynolds equation for diverse purposes. To give an example, in a 2015 report, Xu and Jiang of the Southeast University in China set out to design a new spherical hinge for use in reciprocating machinery…While these authors had previously developed such a hinge, they found that it was not suitable for use under unsymmetrical loading conditions. They therefore proposed a self-compensating hydrostatic hinge to improve on their previous design…In the analysis phase of their study, Xu and Jiang needed a reliable method for assessing the relative performance of each design iteration, and they turned to Dr. Dousti's work for guidance on this matter. Dr. Dousti's work provided proof that the Reynolds equation could be used in a variety of contexts, and Xu and Jiang have used his work as a justification for pursuing the use of a Reynolds equation in their own study…Another relevant application of Dr. Dousti's work comes from Wang et al. of the Harbin Institute of Technology in China…In their study, Wang et al. devised a finite element analysis for modeling the elastic ring, as well as a computational fluids dynamic element analysis for

> modeling the lubricant film. This allowed them to obtain several critical parameters about their elastic SFD, including its pressure distribution, oil film force, and ring deformation...

However, Mr. Hayrapetian's statements are not supported by objective documentary evidence to show that the self-petitioner's research work formed the basis for the advancement of the mechanical engineering and environmental fields. The record lacks any independent evidence to show that the self-petitioner's development, under contract, of a computer code for Panasonic and Flowserve Corporation, as stated in the self-petitioner's statement, is objective evidence that he is in a position to advance the proposed endeavor.

Reza Azizi, Development Engineer, Canadian Bearings, Ltd., stated in part:

> ...In my original letter, I mentioned that CBB was interested in applying Dr. Dousti's models to our R&D operations...Dr. Dousti has completed a number of interesting projects for CBB over the years. For instance, we have consulted with him on the design of a 3510 Kg blower fan. I recently asked Dr. Dousti to provide CBB with an analysis of the rotordynamics and bearings of this fan. Dr. Dousti provided useful information for this project, and he uncovered several important properties of this fan system, including the fact that the low rotational speed of the system did not lead to high shear heating and temperature rise. In addition t this project, we have consulted him on the design of novel wood bearings made from the wood *Lignum vitae* and tilting speed bearings for radial and thrust in high speed compressors. In addition to consulting Dr. Dousti on these projects, I have also asked him directly for computer code for use in our bearing analysis. I am not able to disclose documentation for all the projects where we have collaborated due to client confidentiality. I can, however, unequivocally state that we have used Dr. Dousti's work multiple times in our research and business endeavors...

Mr. Azizi's statements do not show that the self-petitioner's collaboration with his organization is objective independent evidence that he is well positioned to advance the proposed endeavor. The evidence in the record does not show that any of the organizations that have contracted the services of the self-petitioner have used his research work or different projects in the advancement of the mechanical engineering and environmental fields, or that either field has benefited as a whole from the self-petitioner's work.

As noted in the NOIR, the record shows the self-petitioner has conducted, published, and presented research work during the past six years, and even though USCIS recognizes that research must add information to the pool of knowledge in some way in order to be accepted for publication, presentation, funding, or academic credit, not every individual who has performed original research will be found to be well positioned to advance his or her proposed endeavor. Rather, USCIS examines the factors set forth in *Dhanasar* to determine whether, for instance, the individual's progress towards achieving the goals of the proposed research, record of success in similar efforts, or generation of interest among relevant parties supports such a finding. *Id.* at 890.

The self-petitioner has not shown that his research has been frequently cited by independent researchers in the mechanical engineering or environmental fields or otherwise served as an impetus for progress in the field, that it has affected the field, or that it has generated substantial positive discourse in the broader research community. The evidence in the record also fails to otherwise demonstrate that his work constitutes a record of success or progress in his area of research. The burden of proof is on the petitioner to show eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

Going on record without supporting documentary evidence is not sufficient for the purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Assoc. Comm'r 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg'l Comm'r 1972)).

In sum, the self-petitioner has not demonstrated a record of success or progress in his field, or a degree of interest in his work from relevant parties, that rise to the level of rendering him well positioned to

advance his proposed endeavor of conducting research aimed at improving the mechanical engineering or environmental field. As the record is insufficient to demonstrate that the self-petitioner is well positioned to advance his proposed endeavor, he has not established that he satisfies the second prong of the *Dhanasar* framework.

### C.  Balancing Factors to Determine Waiver's Benefit to the United States.

The third prong requires the self-petitioner to demonstrate that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. Here, the self-petitioner claims that he is eligible for a waiver due to his accomplishments, for which he claims he is far more qualified than other similarly educated scholars with the same minimum education and experience.

Nevertheless, as the self-petitioner has not established that a substantial merit and national importance of the proposed endeavor exists, or that he is well positioned to advance his proposed endeavor as required by the first and second prong of the *Dhanasar* framework, he is not eligible for a national interest waiver and further discussion of the balancing factors under the third prong would serve no meaningful purpose.

The evidence in the record further does not show that the self-petitioner is eligible for second preference classification through the national interest waiver process.

CONCLUSION

As the self-petitioner has not met the requisite three prongs set forth in the *Dhanasar* analytical framework, USCIS finds that he has not established eligibility for or otherwise merits a national interest waiver as a matter of discretion.

In reviewing an immigrant visa petition, USCIS must consider the extent of the documentation furnished and the credibility of that documentation as a whole. *See Matter of Izdebska*, 12 I&N Dec. 54 (Reg. Comm. 1966).

The petitioner must demonstrate the beneficiary's eligibility as of the date of filing, a petition cannot be approved at a future date after the petitioner or beneficiary becomes eligible under a new set of facts. *See Matter of Katigbak*, 14 I&N Dec. at 49. 8 C.F.R. §§ 103.2(b)(1), (12).

If the petitioner fails to submit evidence in support of Form I-140, or fails to respond to this NOIR, USCIS may revoke the approval of Form I-140 based upon the reasons set forth in this NOIR.

Pursuant to Section 291 of the INA, whenever any person makes an application for an immigration benefit, they shall bear the burden of proof to establish eligibility. Accordingly, the petitioner must prove by a preponderance of the evidence, in other words, that it is more likely than not, that the beneficiary is fully qualified for the benefit sought. *See Matter of E-M-*, 20 I & N Dec. 77 (Comm. 1989). After a careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought. As a result, USCIS revokes the approval of Form I-140 as of the date of approval.



Exhibit 3

 **U.S. Citizenship
and Immigration
Services**

**Non-Precedent Decision of the
Administrative Appeals Office**

MATTER OF S-D-

DATE: MAR. 20, 2019

APPEAL OF TEXAS SERVICE CENTER DECISION

PETITION:    FORM I-140, IMMIGRANT PETITION FOR ALIEN WORKER

The Petitioner, a mechanical engineer, seeks second preference immigrant classification as a member of the professions holding an advanced degree, as well as a national interest waiver of the job offer requirement attached to this EB-2 classification. *See* Immigration and Nationality Act (the Act) section 203(b)(2), 8 U.S.C. § 1153(b)(2). After a petitioner has established eligibility for EB-2 classification, U.S. Citizenship and Immigration Services (USCIS) may, as matter of discretion, grant a national interest waiver if the petitioner meets a three-prong framework set forth in our precedent decision relating to such a waiver.

The Texas Service Center approved the Form I-140, Immigrant Petition for Alien Worker. However, the Director of the Texas Service Center subsequently issued a notice of intent to revoke (NOIR) and later revoked the approval of the immigrant petition, finding that U.S. Citizenship and Immigration Services (USCIS) had approved the petition in error. Specifically, the Director determined that although the Petitioner qualified for classification as a member of the professions holding an advanced degree, he had not established that a waiver of the required job offer, and thus of the labor certification, would be in the national interest.

On appeal, the Petitioner submits a brief and contends that he is eligible for a national interest waiver.

Upon *de novo* review, we will remand the matter to the Director for further action and consideration.

## I. LAW

The Secretary of Homeland Security "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition . . . ." Section 205 of the Act, 8 U.S.C. § 1155. By regulation this revocation authority is delegated to any USCIS officer who is authorized to approve an immigrant visa petition. 8 C.F.R. § 205.2(a). USCIS must give the petitioner notice of its intent to revoke the prior approval of the petition and the opportunity to submit evidence in opposition thereto, before proceeding with written notice of revocation. *See* 8 C.F.R. § 205.2(b) and (c). The Board of Immigration Appeals has discussed revocations on notice as follows:

*Matter of S-D-*

> [A] notice of intention to revoke a visa petition is properly issued for "good and sufficient cause" where the evidence of record at the time the notice is issued, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof. The decision to revoke will be sustained where the evidence of record at the time the decision is rendered, including any evidence or explanation submitted by the petitioner in rebuttal to the notice of intention to revoke, would warrant such denial.[1]

To establish eligibility for a national interest waiver, a petitioner must first demonstrate qualification for the underlying EB-2 visa classification, as either an advanced degree professional or an individual of exceptional ability in the sciences, arts, or business.   Because this classification requires that the individual's services be sought by a U.S. employer, a separate showing is required to establish that a waiver of the job offer requirement is in the national interest.

Section 203(b) of the Act sets out this sequential framework:

> (2)  Aliens who are members of the professions holding advanced degrees or aliens of exceptional ability. –
>
> > (A) In general. – Visas shall be made available . . . to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.
> >
> > (B) Waiver of job offer –
> >
> > > (i)  National interest waiver. . . .  [T]he Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

In 1998, under the legacy Immigration and Naturalization Service, we set forth an initial framework for adjudicating national interest waiver petitions in the precedent decision *Matter of New York State Dep't of Transp. (NYSDOT)*, 22 I&N Dec. 215, 217-18 (Acting. Assoc. Comm'r 1998).   Under *NYSDOT*, a petitioner must first demonstrate that the individual seeks employment in an area of substantial intrinsic merit. *Id.* at 217.   Next, a petitioner must show that the proposed benefit will be national in scope. *Id.*   Finally, the petitioner seeking the waiver must establish that the individual

---

[1] *Matter of Ho*, 19 I&N Dec. 582, 590 (BIA 1988) (citing *Matter of Estime*, 19 I&N Dec. 450 (BIA 1987)).

2

*Matter of S-D-*

will serve the national interest to a substantially greater degree than would an available U.S. worker having the same minimum qualifications. *Id.* at 217-18.

We vacated our *NYSDOT* precedent decision in December 2016 and set forth a new framework for adjudicating national interest waiver petitions in *Matter of Dhanasar*, 26 I&N Dec. at 884. The *Dhanasar* precedent decision states that USCIS may, as matter of discretion, grant a national interest waiver if the petitioner demonstrates: (1) that the foreign national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. *Id.*

## II. ANALYSIS

The Petitioner filed the Form I-140 in May 2016 and the Director approved that petition under the *NYSDOT* analytical framework in June 2016. In May 2018, the Director issued a NOIR indicating that the record did not establish the Petitioner satisfied the requirements of the *Dhanasar* framework. The Petitioner responded to the NOIR with arguments and evidence addressing the *Dhanasar* framework, but the Director determined that he did not meet any of the three prongs set forth in that precedent decision.

At issue in this matter is whether the Director had good and sufficient cause to issue the NOIR; specifically, whether "the evidence of record at the time the notice is issued, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof." *Matter of Ho*, 19 I&N Dec. at 582 (citing *Matter of Estime*, 19 I&N Dec. at 450). Because the instant petition had been approved in June 2016 and therefore was not pending[2] with USCIS when *Dhanasar* was issued on December 27, 2016, we are remanding for the Director to consider whether the Petitioner met his burden of proof with respect to the *NYSDOT* framework in place at the time the petition was approved. If after further review the Director intends to revoke the approval of the instant petition, he must issue a new NOIR based on the evidentiary requirements that applied under *NYSDOT* and provide the Petitioner an opportunity to offer evidence in response.

## III. CONCLUSION

We are remanding the petition for the Director to apply the *NYSDOT* analytical framework to determine whether the Petitioner has established eligibility for the benefit sought, or whether there is good and sufficient cause to issue a new NOIR.

---

[2] Any subsequent petitions filed by the Petitioner under this classification that were pending when *Dhanasar* was issued in December 2016, or that were filed after that date, should be considered under the newer framework.

3

*Matter of S-D-*

**ORDER:**     The decision of the Director is withdrawn.   The matter is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision which, if adverse, shall be certified to us for review.

Cite as *Matter of S-D-*, ID# 2106869 (AAO Mar. 20, 2019)



Exhibit 4

← Email copy and pasted

U.S. Department of Homeland Security
P. O. BOX 851488 - DEPT. A
TEXAS SERVICE CENTER
MESQUITE,TX 75185

U.S. Citizenship and Immigration Services
Monday, May 20, 2019

Emailed to attorneys@chenassociates.com

Dear Saeid Dousti:

On 05/10/2019, you or the designated representative shown below, contacted us about your case.  Some of the key information given to us at that time was the following:

Caller indicated they are:
 -- Applicant or Petitioner

Attorney Name: -- CHEN, VICTORIA

Case type: -- I140

Filing date: -- 05/06/2016

Receipt #: -- SRC-16-902-44939

Referral ID: SR11301900132TSC

Beneficiary (if you filed for someone else): -- Information not available

Your USCIS Account Number (A-number): -- Information not available

Type of service requested: -- Outside Normal Processing Times


The status of this service request is:

We have received your service request and researched the status of your case. We have had to perform additional review and this has caused a delay in processing time. Your case is currently with an adjudicating officer. You should receive a decision or notice of further action within 60 days.

What You Can Do
Please see the "Online Services" below to check the status of your case in the future.

We hope this information is helpful to you.

XM1943
--------------------------------
Online Services
We offer many online services and tools to help you find the information you need. Please visit our Web site at www.uscis.gov for information about:
* Using our Case Status Online tool;
* Signing up for case status updates;
* Checking processing times;
* Submitting an e-Request to inquire about certain applications and petitions;
* Using our Office Locator;
* Using InfoPass to schedule an appointment; and
* Downloading forms.

Address Changes
If you move, please provide us with an updated address. For more information about address changes, please visit our Web site at www.uscis.gov/ar-11, and click on "Change Your Address Online."

For More Information
If you do not find the information you need through our online services and need further assistance, you may contact the USCIS Contact Center at 1-800-375-5283 or 1-800-767-1833 (TDD for the hearing impaired).

U.S. Department of Homeland Security
P. O. BOX 851488 - DEPT. A
TEXAS SERVICE CENTER
MESQUITE, TX 75185



**U.S. Citizenship and
Immigration Services**

Friday, June 28, 2019

SAEID DOUSTI
2541 AVEMORE POND RD
CHARLOTTESVILLE VA 22911

Dear Saeid Dousti:

On 06/25/2019, you or the designated representative shown below, contacted us about your case.  Some of the key information given to us at that time was the following:

**Caller indicated they are:** Applicant or Petitioner
**Attorney Name:** CHEN, VICTORIA
**Case type:** I140
**Filing date:** 05/06/2016
**Receipt #:** SRC-16-902-44939
**Referral ID:** SRI1301900132TSC*
**Beneficiary (if you filed for someone else):** Information not available
**Your USCIS Account Number (A-number):** A208859346
**Type of service requested:** Outside Normal Processing Times

The status of this service request is:

We have received your service request and researched the status of your case. We have had to perform additional review and this has caused a delay in processing time. Your case is currently with an adjudicating officer. You should receive a decision or notice of further action within 60 days.

What You Can Do
Please see the "Online Services" below to check the status of your case in the future.

We hope this information is helpful to you.

XM 1471

--------------------------------

Online Services
We offer many online services and tools to help you find the information you need. Please visit our Web site at www.uscis.gov for information about:
* Using our Case Status Online tool;
* Signing up for case status updates;
* Checking processing times;
* Submitting an e-Request to inquire about certain applications and petitions;
* Using our Office Locator;
* Using InfoPass to schedule an appointment; and

U.S. CIS - 06-28-2019 02:11 PM CDT - SRC-16-902-44939

**Scanned with CamScanner**



U.S. Department of Homeland Security
P. O. BOX 851488 - DEPT. A
TEXAS SERVICE CENTER
MESQUITE,TX 75185

**U.S. Citizenship and
Immigration Services**

Thursday, August 15, 2019

SAEID DOUSTI
2541 AVEMORE POND RD
CHARLOTTESVILLE VA 22911

Dear Saeid Dousti:

On 08/06/2019, you or the designated representative shown below, contacted us about your case.  Some of the key information given to us at that time was the following:

| Caller indicated they are: | Applicant or Petitioner |
|---|---|
| **Attorney Name:** | CHEN, VICTORIA |
| **Case type:** | I140 |
| **Filing date:** | 05/06/2016 |
| **Receipt #:** | SRC-16-902-44939 |
| **Referral ID:** | WKD2181902197TSC |
| **Beneficiary (if you filed for someone else):** | Information not available |
| **Your USCIS Account Number (A-number):** | Information not available |
| **Type of service requested:** | Other |

The status of this service request is:

We have received your service request and researched the status of your case. We have had to perform additional review and this has caused a delay in processing time. Your case is currently with an adjudicating officer. You should receive a decision or notice of further action within 60 days.

What You Can Do
Please see the "Online Services" below to check the status of your case in the future.

We hope this information is helpful to you.

XM1901

------------------------------

Online Services
We offer many online services and tools to help you find the information you need. Please visit our Web site at www.uscis.gov for information about:
* Using our Case Status Online tool;
* Signing up for case status updates;
* Checking processing times;
* Submitting an e-Request to inquire about certain applications and petitions;
* Using our Office Locator;
* Using InfoPass to schedule an appointment; and

U.S. CIS - 08-15-2019 10:28 AM CDT - SRC-16-902-44939

Scanned with CamScanner

* Downloading forms.

Address Changes
If you move, please provide us with an updated address. For more information about address changes, please visit our Web site at www.uscis.gov/ar-11, and click on "Change Your Address Online."

For More Information
If you do not find the information you need through our online services and need further assistance, you may contact the USCIS Contact Center at 1-800-375-5283 or 1-800-767-1833 (TDD for the hearing impaired).

Scanned with CamScanner



Exhibit 5

A#:208-859-346

I140 Case number: SRC1690244939

I290B Case number: SRC1890551388

I485 Case number: SRC1690306454

To Whom It May Concern:

This letter is intended to notify USCIS office of Texas Service Center of a legal complaint against it in the Federal District Court for the District of Columbia in the nature of mandamus due to the refusal of Texas Service Center to follow the order of USCIS Administrative Appeals Office to adjudicated Dr. Dousti's permanent residence application.

**Brief History:** On May 16, 2016, Dr. Dousti filed an I-140 petition for classification as a member of the professions holding an advanced degree in accordance with Section 203(b)(2), and for a national interest waiver (NIW) of the requirement of a job offer. His petition was approved by USCIS on June 18, 2016. On May 1, 2018, Officer **Nancy Cortez** (XM1243) at USCIS Texas service center issued a Notice of Intent to Revoke ("**the NOIR**"), to which Dr. Dousti responded. On July 2, 2018, Officer **Nancy Cortez** (XM1243) at USCIS Texas service center disregarded Dr. Dousti's factual responses and issued a notice ("**the Revocation**") that the approval of Dr. Dousti's I-140 petition had been revoked. On March 20, 2019, the administrative appeals office identified the revocation of the approved I-140 case with the Matter of Dhanasar erroneous and ordered as follows:

> "We are remanding the petition for the Director to apply the NYSDOT analytical framework to determine whether the Petitioner has established eligibility for the benefit sought, or whether there is good and sufficient cause to issue a new NOIR. The decision of the Director is withdrawn. The matter is

*remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision which, if adverse, shall be certified to us for review."*

Since AAO's direct order and despite Dr. Dousti's repeated service requests, phone calls and reaching to ombudsman office, unfortunately, USCIS office of Texas Service Center has refused to conduct its legal duties and adjudicate Dr. Dousti's application.

**Tasks to Accomplish:** Based on AAO order, Dr. Dousti's I-140 is considered approved, thus, USCIS is expected to confirm AAO's decision and adjudicate Dr. Dousti's application for the adjustment of status by scheduling his interview.

**Time Frame:** Based on the latest service request response by officer# XM 1471 from Texas Service Center on June 25, 2019, adjudication had to be made on Dr. Dousti's application in a 60 time frame. Hereby, you are notified that the legal action will be taken at the Washington D.C Federal District Court on **September 19, 2019**, **UNLESS** USCIS perform its legal duties.

Saeid Dousti

August 27, 2019



Exhibit 6

U.S. Department of Homeland Security
P.O. Box 852381
Mesquite, Texas 75185-2381



U.S. Citizenship
and Immigration
Services

**DATE:** September 20, 2019

**TO:**
**Saeid Dousti**
**2541 Avemore Pond Rd.**
**Charlottesville, VA 22911-7235**

**Petition:** Form I-140

| | |
|---|---|
| **File Number:** | SRC1690244939 / A208859346 |
| **Beneficiary:** | |
| | Saeid Dousti |

## DECISION

**DISCUSSION:** Reference is made to the Immigrant Petition for Alien Worker (Form I-140) filed by Saeid Dousti (petitioner and beneficiary). On May 6, 2016, Form I-140 was revoked by U.S. Citizenship and Immigration Services (USCIS) because the self-petitioner failed to establish his eligibility for the benefit sought.

8 C.F.R. § 103.5(a)(5) states in pertinent part:

> *Motion by Service officer* —(i) *Service motion with decision favorable to affected party.* When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision in order to make a new decision favorable to the affected party, the Service officer shall combine the motion and the favorable decision in one action...(ii) *Service motion with decision that may be unfavorable to affected party.* When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30-day period.

A review of USCIS records and the self-petitioner's file shows the reasons for revocation have been overcome.

**ORDER:** Based upon USCIS motion, it is ordered that Form I-140 be reopened and the original decision withdrawn. A final decision denying Form I-140 will follow this notice.

Sincerely,

Gregory A. Richardson, Director
Texas Service Center

Officer XM 1243

cc.:    Victoria Chen, Esq.
        N. America Immigration Law Group
        2723 S. State St., Ste. 150
        Ann Arbor, MI 48104

Scanned with CamScanner



Exhibit 7

# THE UNITED STATES OF AMERICA

## I-797 | NOTICE OF ACTION

DEPARTMENT OF HOMELAND SECURITY
U.S. CITIZENSHIP AND IMMIGRATION SERVICES

| Receipt Number SRC1690244939 | | Case Type I140 - IMMIGRANT PETITION FOR ALIEN WORKER |
|---|---|---|
| Received Date 05/06/2016 | Priority Date 05/06/2016 | Petitioner DOUSTI, SAEID |
| Notice Date 09/20/2019 | Page 1 of 1 | Beneficiary  A208 859 346 DOUSTI, SAEID |

SAEID DOUSTI
2541 AVEMORE POND RD
CHARLOTTESVILLE VA  229117235

Notice Type: Approval Notice
Section: Indiv w/Adv Deg or Exceptional
Ability in the National Interest
Consulate:
ETA Case Number: NA
SOC Code: 172141

The above petition has been approved. The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status. He or she should contact the local USCIS office to obtain Form I-485, Application to Register Permanent Residence or Adjust Status. A copy of this notice should be submitted with the application, with appropriate fee, to this Service Center. Additional information about eligibility for adjustment of status may be obtained from the local USCIS office serving the area where he or she lives, or by calling 1-800-375-5283.

If the person for whom you are petitioning decides to apply for a visa outside the United States based upon this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO) at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.sba.gov/ombudsman or phone 202-205-2417 or fax 202-481-5719.

**NOTICE:** Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

Texas Service Center
U. S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 851488 - DEPT A
Mesquite TX 75185-1488

USCIS Contact Center: www.uscis.gov/contactcenter

FORM I-797 [REV. 08/01/16]


Scanned with CamScanner

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER SRC-16-902-44939 | | CASE TYPE I140 IMMIGRANT PETITION FOR ALIEN WORKER |
|---|---|---|
| RECEIPT DATE May 10, 2016 | PRIORITY DATE May 6, 2016 | PETITIONER DOUSTI, SAEID |
| NOTICE DATE June 20, 2016 | PAGE 1 of 1 | BENEFICIARY A208 859 346 DOUSTI, SAEID |

VICTORIA CHEN
N AMERICA IMMIGRATION LAW GRP
2723 S STATE ST STE 150
ANN ARBOR MI 48104

**Notice Type**: Approval Notice
Section: Indiv w/Adv Deg or Exceptional
Ability in the National Interest

This notice is to advise you of action taken on this case. The official notice has been mailed according to the mailing preferences noted on the Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. Any relevant documentation was mailed according to the specified mailing preferences.

The above petition has been approved. The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status. He or she should contact the local USCIS office to obtain Form I-485, Application for Permanent Residence. A copy of this notice should be submitted with the application, with appropriate fee, to this Service Center. Additional information about eligibility for adjustment of status may be obtained from the local USCIS office serving the area where he or she lives, or by calling 1-800-375-5283.

If the person for whom you are petitioning decides to apply for a visa outside the United States based on this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO) at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.ombudsman.sba.gov or phone 202-205-2417 or fax 202-481-5719.

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS
TEXAS SERVICE CENTER
P O BOX 851488 - DEPT A
MESQUITE   TX   75185-1488
**Customer Service Telephone: (800) 375-5283**

